# COMMONWEALTH OF VIRGINIA



CHESTERFIELD
Civil Division
9500 COURTHOUSE ROAD
CHESTERFIELD, VA 23832
804-748-1241
Proof of Service

Virginia:
In the CHESTERFIELD

Case number: 041CL11000096-00
Service number: 001
Service filed: January 12, 2011
Judge:

Served by: SPECIAL PROCESS SERVER
Style of case: TAWNY GROSSBERG vs TRAVELERS INDEMNITY COMPANY OF
Service on: THE TRAVELERS INDEMNITY          Attorney: P CHRISTOPHER GUEDRI
COMPANY OF AMERICA
CORPORATION SERVICE CO R/A
11 SOUTH 12TH STREET
RICHMOND VA

Instructions:

Returns shall be made hereon, showing service of Summons issued Wednesday, March 16, 2011 with a copy of the
Complaint filed Wednesday, January 12, 2011 attached.

Hearing date   :
Service issued: Wednesday, March 16, 2011

For Sheriff Use Only

**EXHIBIT**

**A**

# CERTIFICATE
## OF
## CORPORATION SERVICE COMPANY

**THIS CERTIFICATE MADE** pursuant to Subsection 2(b) of Section 13.1-634, Subsection 2(b) of Section 13.1-763, Subsection 2(b) of Section 13.1-1015 and Section 50-73.4 of the Virginia Code.

**CORPORATION SERVICE COMPANY**, a corporation authorized to do business in the Commonwealth of Virginia, does hereby certify that:

1.  It is incorporated under the Laws of the State of Delaware and was authorized to do business in Virginia on June 1, 2001.

2.  (a)    It maintains a business office in the Commonwealth of Virginia at 11 South 12th Street, P.O. Box 1463, Richmond, Virginia, 23219.

    (b)    Service of process may be made at such business office in the City of Richmond upon corporations, limited liability companies, partnerships, trusts and other entities, associations and persons which have designated it as agent for service of process.

    (c)    The names of the individuals authorized to receive process served upon Corporation Service Company as the agent for service of process of any corporations, limited liability companies, partnerships, trust and other entities, associations and persons which have designated it as such agent are:

    Beverley L. Crump          Rene Nordquist          Meda Sterrett
    Nicole T. McCallum         Pamela Frazier          Linda B. Liles
    Amy Tarker                 Kari Childress          John Isom
    Dustin Kline

**WHEREFORE**, Corporation Service Company has caused its corporate name to be hereunto subscribed this ___ day of January 2011.

CORPORATION SERVICE COMPANY

BY: _____
       George A. Massih III, Vice President

STATE OF DELAWARE
COUNTY OF NEW CASTLE

The foregoing instrument was acknowledged before me this ___ day of January 2011, by George A. Massih III.

My Commission Expires: _8-5-20__

Notary Public

## AFFIDAVIT OF SERVICE

Commonwealth of Virginia
Chesterfield Circuit Court

Tawny Grossberg ) Case No.: CL11000096-00
)
)
Plaintiff )
v. )
The Travelers Indemnity Company of America )
)
)
Defendant )

I, David M. Hester, Sr., a Private Process Server, being duly sworn state that I am over the age of eighteen years, not a party to the above-named action, nor otherwise interested in the subject matter in controversy. Within the boundaries of the state where service was effected, I was authorized by law to perform said service.

I served the following document(s):  Summons and Complaint with Exhibits

Service on: The Travelers Indemnity Company of America, c/o Corporation Service Company, R/A
Service address:  11 S. 12th St., Richmond, VA 23219.

Date of service: March 23, 2011    Time of service: 11:54 AM

MANNER OF SERVICE:
(XX) PERSONAL SERVICE--accepted by Rene Nordquist, Legal Assistant

COMMENTS:

David M. Hester, Sr.
Hester Process Service, Inc.
P.O. Box 37128
Richmond, VA  23234
(804) 271-0298

Subscribed and sworn to before me, a notary public, on this 24th day of March, 2011 by David M. Hester, Sr. who is personally known to me.

Notary Public                               My Commission Expires:  11-30-12
Donna Faye Hester
Commonwealth of Virginia
County of Chesterfield



ID: 11-025898   Client Reference: 216549



**ALLEN ALLEN ALLEN&ALLEN**
*Attorneys for Injured Persons since 1910*

Richmond Office
File No. 216549

March 15, 2011

Hon. Judy Worthington, Clerk
Circuit Court of Chesterfield County
P. O. Box 125
Chesterfield, VA 23832

**RE:   Tawny Grossberg v. The Travelers Indemnity Company of America**

Dear Ms. Worthington:

Enclosed please find a Complaint previously filed with your Court.  Please process the enclosed Complaint for service on the defendant, The Travelers Indemnity Company of America on the following:

**The Travelers Indemnity Company of America**
**Serve: Corporation Service Company, Registered Agent**
**11 S. 12th Street**
**Richmond, VA**

Please prepare these papers for private service by Hester Process Service and call my legal assistant, Kendall McCormick, at 257-7552 when they are ready.  Thank you.

Very truly yours,

P. Christopher Guedri

PCG/krm
cc:    Tawny Grossberg

**Richmond Office**
1809 Staples Mill Road
Richmond, VA 23230
804.353.1200
800.768.2222
804.257.7599 fax

**Petersburg Office**
106 South Market Street
Petersburg, VA 23803
804.733.8753
800.777.8753
804.733.8767 fax

**Chesterfield Office**
6123 Harbourside Centre Loop
Midlothian, VA 23112
804.745.1200
800.777.8993
804.745.8997 fax

**Fredericksburg Office**
3504 Plank Road
Fredericksburg, VA 22407
540.786.4100
800.275.8882
540.786.9585 fax

**Mechanicsville Office**
7255 Mechanicsville Turnpike
Mechanicsville, VA 23111
804.746.4900
800.298.7577
804.746.2315 fax

**Garrisonville Office**
50 Dunn Drive, Suite 107
Stafford, VA 22556
540.657.9222
866.388.6410
540.657.9522 fax

**Charlottesville Office**
2100 Rio Hill Center
Charlottesville, VA 22901
434-295-4961
866-412-9991
434-284-4299 fax

**Short Pump Office**
11577 West Broad Street
Richmond, VA 23233
804-836-1170
866-727-1276
804-836-1189 fax

www.allenandallen.com

VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF CHESTERFIELD
Case No.: _____

TAWNY GROSSBERG,

                                                 Plaintiff,

v.

THE TRAVELERS INDEMNITY COMPANY
  OF AMERICA,

                                                 Defendant.

## COMPLAINT

1.      This is an action for breach of an insurance contract.

2.      On November 17, 2006, the defendant, Travelers Indemnity Company of America

(herein "The Travelers"), issued and delivered a policy of insurance to U.S. Vittles, Inc., T/A

Buz & Ned's Real Barbeque for the policy period 01/01/07 to 01/01/08.

3.      The Policy Number of said policy was BA-3318W962-07-SEL (herein "the

policy").

4.      A true and accurate copy of the policy and all endorsements to such is attached to

this Complaint as Exhibit 1.

5.      The named insured on the policy per the policy's declarations page was listed as

"U.S. Vittles, Inc., T/A Buz & Ned's Real Barbeque, 1119 North Boulevard, Richmond, Virginia

23230."

6.      At all times relevant to this action, U.S. Vittles, Inc. was a Virginia stock

corporation (herein "the corporation").

7.      At all times relevant to this action, 100% of the stock of the corporation was

owned by Bruce Grossberg, the plaintiff's husband.

1

8. At all times relevant to this action, Bruce Grossberg resided with his wife, Tawny Grossberg, the plaintiff herein, and their two children at their home located at 3201 Old Gun Road West, Midlothian, Virginia 23113.

9. For purposes of the liability portion of the policy, the term "insureds" was defined to include "'You' for any covered 'auto'".

10. For purposes of the liability portion of the policy, the term "you" was defined as follows: "the Named Insured shown in the Declarations."

11. Said policy included an endorsement providing for uninsured and underinsured motorist coverage.

12. The uninsured motorist endorsement to the policy was numbered CA 21 21 11 02 (herein "the uninsured motorist endorsement") and defined insureds there under to include "'You' or any 'family member'".

13. The uninsured motorist endorsement defined "you" as "the person or organization shown as the named insured in ITEM ONE of the declarations."

14. The uninsured motorist endorsement defined "family member" as "a person related to "you" by blood, marriage, or adoption who is a resident of "your household," including a ward or a foster child."

15. On or about November 12, 2005, the plaintiff was operating a motor vehicle in an easterly direction on Marshall Street at or near its intersection with Summit Avenue in the City of Richmond, Virginia.

16. At that time and place, Barbara Lamm Gregory was operating a motor vehicle in a southerly direction on Summit Avenue.

17.     As a direct and proximate result of the negligence of Barbara Lamm Gregory, the vehicle operated by her collided with the vehicle operated by Tawny Grossberg and as a result of such collision Tawny Grossberg was seriously injured.

18.     At the time of said collision, Tawny Grossberg was an "insured" as defined by the uninsured motorist endorsement to the policy.

19.     On or about October 22, 2007, Tawny Grossberg filed suit against Barbara Lamm Gregory in the Circuit Court for the City of Richmond seeking damages for the injuries sustained in the motor vehicle collision of November 12, 2005. A copy of the Complaint filed by Tawny Grossberg against Barbara Lamm Gregory is attached to this Complaint as Exhibit 2.

20.     On or about October 26, 2007, "The Travelers" was served with process in the case Tawny Grossberg vs. Barbara Lamm Gregory (Case No.: CL07004998-00-8) as required by the terms of the policy and Va. Code § 38.2-2206.

21.     On or about November 15, 2007, The Travelers, acting by and through Lisa Kent Duley, its attorney, filed an Answer.

22.     On June 4, 5, and 8, 2009, the case of Tawny Grossberg vs. Barbara Lamm Gregory was tried to a jury's verdict in the Circuit Court for the City of Richmond.

23.     At said trial, The Travelers actively participated through its attorney, Lisa Kent Duley.

24.     At the trial of that said action, the jury returned a verdict in favor of Tawny Grossberg against Barbara Lamm Gregory in the amount of $615,000.00, plus interest on the amount of $123,000.00 from November 12, 2005.

25.     On October 1, 2009, judgment was entered in favor of Tawny Grossberg against Barbara Lamm Gregory in the amount of $615,000.00, plus interest on $123,000.00 from

3

November 12, 2005 until paid and post-judgment interest from June 8, 2009 until paid. A copy of the Judgment Order is attached to this Complaint as Exhibit 3 (herein "the judgment").

26.     At the time of the motor vehicle collision of November 12, 2005, Barbara Lamm Gregory was insured under a policy of liability insurance issued by GEICO which provided her $300,000.00 in bodily injury liability coverage.

27.     Subsequent to the entry of the Judgment Order, GEICO, on behalf of Barbara Lamm Gregory, paid Tawny Grossberg the sum of $300,000.00, the limit of its liability coverage.

28.     On several occasions since that time, counsel for Tawny Grossberg made demand upon The Travelers to pay the balance of the judgment entered in favor of Tawny Grossberg pursuant to the terms of the uninsured motorist endorsement of the policy issued by The Travelers.

29.     To date, The Travelers has refused to pay the balance of the judgment or any part thereof.

30.     As a result of The Travelers' refusal to pay the balance of the judgment to the plaintiff here, The Travelers has breached its contract of insurance.

31.     As a result of said breach of contract, The Travelers owes the plaintiff the sum of $380,865.00, the unpaid balance of the judgment as of December 1, 2010.

WHEREFORE, the plaintiff, Tawny Grossberg, prays for judgment against the defendant, The Travelers Indemnity Company of America in the sum of $380,865.00 (the unpaid balance of the judgment as of December 1, 2010) for continuing post-judgment interest and for her attorney's fees incurred in the pursuit of this action.

4

TRIAL BY JURY IS DEMANDED.

TAWNY GROSSBERG

By: _Of Counsel_

P. Christopher Guedri (VSB No.: 18613)
ALLEN ALLEN ALLEN AND ALLEN
1809 Staples Mill Road
Post Office Box 6855
Richmond, Virginia 23230
Telephone:     (804) 359-9151
Facsimile:     (804) 257-7599

5

 **TRAVELERS**

# COMMERCIAL INSURANCE

### A Custom Insurance Policy Prepared for:

**U.S. VITTLES, INC. T/A**
**BUZ & NED'S REAL BARBEQUE**
**1119 NORTH BOULEVARD**
**RICHMOND VA 23230**

Presented by:  BROWN & BROWN INS

EXHIBIT

 **TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

RESTAURANT STEAK/BARBECUE-FAMILY STYLE
COMMON POLICY DECLARATIONS
ISSUE DATE: 11/17/06

POLICY NUMBER: BA-3318W962-07-SEL

INSURING COMPANY:
THE TRAVELERS INDEMNITY COMPANY OF AMERICA

1. NAMED INSURED AND MAILING ADDRESS:
   U.S. VITTLES, INC. T/A
   BUZ & NED'S REAL BARBEQUE
   1119 NORTH BOULEVARD
   RICHMOND, VA 23230

2. POLICY PERIOD:  From 01/01/07 to 01/01/08 12:01 A.M. Standard Time at
   your mailing address.

3. LOCATIONS
   Premises  Bldg.
   Loc. No.  No.  Occupancy          Address

4. COVERAGE PARTS FORMING PART OF THIS POLICY AND INSURING COMPANIES:
   COMMERCIAL AUTOMOBILE COV PART DECLARATIONS          CA T0 01          TIA

5. NUMBERS OF FORMS AND ENDORSEMENTS
   FORMING A PART OF THIS POLICY:   SEE IL T8 01 10 93

6. SUPPLEMENTAL POLICIES: Each of the following is a separate policy
   containing its complete provisions:
   Policy                      Policy No.                Insuring Company

   DIRECT BILL
7. PREMIUM SUMMARY:
   Provisional Premium   $ 4,929
   Due at Inception      $
   Due at Each           $

NAME AND ADDRESS OF AGENT OR BROKER:                COUNTERSIGNED BY:
   BROWN & BROWN INS (FH503)
   P O BOX 3070
   RICHMOND, VA 23228                               _____
                                                    Authorized Representative

                                                    DATE:_____

IL T0 02 11 89      PAGE 1 OF 1
OFFICE: RICHMOND

 **TRAVELERS**

| | |
|---|---|
| **POLICY NUMBER:** | BA-3318W962-07-SEL |
| **EFFECTIVE DATE:** | 01-01-07 |
| **ISSUE DATE:** | 11-17-06 |

LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS
BY LINE OF BUSINESS.

```
IL TO 02 11 89    COMMON POLICY DECLARATIONS
IL T8 01 10 93    FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS
IL TO 01 06 03    COMMON POLICY CONDITIONS
```

COMMERCIAL AUTOMOBILE

```
CA TO 01 01 04    BUSINESS AUTO COV PART ITEMS 1, 2
CA TO 02 01 04    BUSINESS AUTO COV PART - ITEM 3
CA TO 03 04 05    BUSINESS AUTO COV PART ITEMS 4, 5
CA TO 58 01 04    VIRGINIA SUPPLEMENTAL DECLARATIONS
CA TO 31 01 04    TABLE OF CONTENTS-BUSINESS AUTO COVFORM
CA 00 01 10 01    BUSINESS AUTO COVERAGE FORM
CA 01 16 03 04    VA CHANGES-BUSINESS AUTO COVERAGE FORM
CA 02 68 11 02    VA CHANGES-CANCELLATION AND NONRENEWAL
CA 21 21 11 02    UNINSURED MOTORISTS END (VIRGINIA)
CA 22 46 11 02    VA MED EXP & INCOME LOSS BENEFITS END
CA FO 14 01 04    AMENDATORY ENDORSEMENT VIRGINIA
```

INTERLINE ENDORSEMENTS

```
IL 00 21 07 02    NUCLEAR ENERGY LIAB EXCL END-BROAD FORM
IL TO 10 12 86    LENDERS CERTIFICATE OF INSURANCE-FORM A
```

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy or any Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

This policy consists of the Common Policy Declarations and the Coverage Parts and endorsements listed in that declarations form.

In return for payment of the premium, Travelers agrees with the Named Insured to provide the insurance afforded by a Coverage Part forming part of this policy. That insurance will be provided by the company indicated as insuring company in the Common Policy Declarations by the abbreviation of its name opposite that Coverage Part.

The companies listed below (each a stock company) have executed this policy, but it is valid only if countersigned on the Common Policy Declarations by our authorized representative.

The Travelers Indemnity Company (IND)
The Phoenix Insurance Company (PHX)
The Charter Oak Fire Insurance Company (COF)
Travelers Property Casualty Company of America (TIL)
The Travelers Indemnity Company of Connecticut (TCT)
The Travelers Indemnity Company of America (TIA)

General Counsel & Secretary

Chairman of the Board & Chief Executive Officer

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, with its permission.

**IL T0 01 06 03**

**COMMERCIAL AUTOMOBILE**

# COMMERCIAL AUTOMOBILE

 **TRAVELERS**                One Tower Square, Hartford, Connecticut 06183

BUSINESS AUTO
COVERAGE PART DECLARATIONS
Issue Date:  11-17-06   EX

ITEM ONE:                 Policy Number:  BA-3318W962-07-SEL

INSURING COMPANY:
THE TRAVELERS INDEMNITY COMPANY OF AMERICA

Declarations Period:  From:  01-01-07 to 01-01-08 12:01 A.M. Standard
Time at your mailing address shown in the Common Policy Declarations.

The Commercial Automobile Coverage Part consists of these
Declarations and the Business Auto Coverage Form shown below.

FORM OF BUSINESS: CORPORATION

ITEM TWO:
 A. COVERAGE AND LIMITS OF INSURANCE:

    Coverage applies only to those Autos shown as Covered Autos by entry
    of one or more Symbols from SECTION 1 - Covered Auto of the
    BUSINESS AUTO COVERAGE FORM

| COVERAGE | COVERED AUTO SYMBOL | LIMITS OF INSURANCE |
|---|---|---|
| | | The most we will pay for any one accident or loss. |
| LIABILITY | 1 | $ 1,000,000 |
| AUTO MEDICAL PAYMENTS | 7 | $ 1,000 EACH PERSON |
| UNINSURED MOTORISTS | 6 | $ 1,000,000 |
| PHYSICAL DAMAGE Comprehensive Coverage | 7   8 | Actual Cash Value or Cost of Repair, whichever is less, minus deductible shown in ITEM THREE- SCHEDULE OF COVERED AUTOS YOU OWN for each covered Auto, but no deductible applies to loss caused by fire or lightning. |

CA T0 01 01 04                         PAGE  (CONTINUED)
PRODUCER BROWN & BROWN INS  FH503       OFFICE RICH 179

 **TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

BUSINESS AUTO
COVERAGE PART DECLARATIONS
Issue Date: 11-17-06  EX

Policy Number:  BA-3318W962-07-SEL

| COVERAGE | COVERED AUTO SYMBOL | LIMITS OF INSURANCE |
|---|---|---|
| PHYSICAL DAMAGE Collision Coverage | 7  8 | Actual Cash Value or Cost of Repair, whichever is less, minus deductible shown in ITEM THREE-SCHEDULE OF COVERED AUTOS YOU OWN for each covered auto. |

B. AUDIT PERIOD:  NOT AUDITABLE

C. DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS:
   Symbols 1-9:  SEE BUSINESS AUTO COVERAGE FORM Section 1
   Covered Autos

 **TRAVELERS**　　　　　One Tower Square, Hartford, Connecticut 06183

BUSINESS AUTO
COVERAGE PART DECLARATIONS
Issue Date:  11-17-06  EX

Policy Number:  BA-3318W962-07-SEL

D.  LOSS PAYABLE CLAUSE

1.  We will pay you and the loss payee named in the policy for "loss"
    to a covered "auto", as interest may appear.

2.  The insurance covers the interest of the loss payee unless the
    "loss" results from conversion, secretion or embezzlement on your
    part.

3.  We may cancel the policy as allowed by the CANCELLATION Common
    Policy Condition.  Cancellation ends this agreement as to the loss
    payee's interest.  If we cancel the policy we will mail you and the
    loss payee the same advance notice.

4.  If we make any payment to the loss payee, we will obtain their
    rights against any other party.

SCHEDULE OF LOSS PAYEES

| VEHICLE NUMBER | LOSS PAYEE (Name and Address) | |
|---|---|---|
| 0001 0002 | SOUTHERN FINANCIAL BANK | |
| | 3124 W. BROAD STREET | |
| | RICHMOND | VA 23230 |
| 0003 | BANK OF AMERICA | |
| | PO BOX 2759 | |
| | JACKSONVILLE | FL 32203-2759 |

CA T0 01 01 04                      PAGE  (CONTINUED)
PRODUCER BROWN & BROWN INS  FH503    OFFICE RICH  179

 **TRAVELERS**                              One Tower Square, Hartford, Connecticut 06183

BUSINESS AUTO
COVERAGE PART DECLARATIONS
Issue Date:  11-17-06  EX

Policy Number:  BA-3318W962-07-SEL

SCHEDULE OF LOSS PAYEES

VEHICLE NUMBER                    LOSS PAYEE (Name and Address)

0004                     DAIMLER CHRYSLER FINANCIAL SERVICE
                         AMERICAS, LLC
                         1011 WARRENVILLE RD
                         STE 600
                         LISLE                              IL
                                                       60532

CA T0 01 01 04                        PAGE  (CONTINUED)
PRODUCER BROWN & BROWN INS  FH503      OFFICE RICH  179

 **TRAVELERS**                    One Tower Square, Hartford, Connecticut 06183

ITEM THREE.   SCHEDULE OF COVERED
AUTOS YOU OWN
(SEE SEPARATE PAGE EXPLAINING
CERTAIN ENTRIES OR ABSENCE THEREOF)

POLICY NUMBER: BA-3318W962-07-SEL

INSURED'S NAME:  U.S. VITTLES, INC. T/A              CA T0 02 01 04
BUZ & NED'S REAL BARBEQUE

| COVERED AUTO NO | GARAGING CITY & STATE | | ZIP CODE | COUNTY TOWN CODE | TERR ZONE CODE | ISO/ STAT CODE | USE CLASS GVW/GCW OR SEAT CAPACITY |
|---|---|---|---|---|---|---|---|
| 1 | RICHMOND | VA | 23230 | | 003 | 01199 | 10000 |
| 2 | RICHMOND | VA | 23230 | | 003 | 01199 | 10000 |
| 3 | RICHMOND | VA | 23230 | | 003 | 7391 | |
| 4 | RICHMOND | VA | 23230 | | 003 | 01199 | 10000 |

| COVERED AUTO NO | YEAR | MAKE/MODEL | VEHICLE ID NO (VIN) | COST NEW | LIMIT OF LIAB | AGE GROUP |
|---|---|---|---|---|---|---|
| 1 | 1999 | DODGE | 1B7MF3369XJ561139 | 34000 | ACV | D |
| 2 | 1998 | DODGE RAM VAN | 2B7JB2124WK113268 | 14500 | ACV | E |
| 3 | 2005 | MINI COOPER S | WMWRE33575TL15642 | 24100 | ACV | 3 |
| 4 | 2006 | DODGE SPRINTER | WD0PD544365888002 | 37116 | ACV | 2 |

| | COVERED AUTO  1 | COVERED AUTO  2 | COVERED AUTO  3 | COVERED AUTO  4 | COVERED AUTO |
|---|---|---|---|---|---|
| DEDUCTIBLES: | | | | | |
| COMPREHENSIVE | 250 | 250 | 250 | 250 | |
| COLLISION | 500 | 500 | 500 | 500 | |
| | | | | | |
| PREMIUMS: | | | | | |
| LIABILITY | 819 | 819 | 713 | 819 | |
| MED PAY | 43 | 43 | 23 | 43 | |
| COMPREHENSIVE | 81 | 57 | 97 | 115 | |
| COLLISION | 190 | 123 | 219 | 293 | |
| | | | | | |
| TOTAL | 1133 | 1042 | 1052 | 1270 | |

TOTAL UNINSURED MOTORISTS PREMIUM: UM BI      213    UM PD
TOTAL UNDERINSURED MOTORISTS PREMIUM: INCL

* APPLICABLE TO COMPREHENSIVE AND SPECIFIED CAUSES OF LOSS COVERAGE
**APPLICABLE TO COMPREHENSIVE, SPECIFIED CAUSES AND COLLISION COVERAGES

 **TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

**BUSINESS AUTO
COVERAGE PART DECLARATIONS**

**POLICY NO.:** BA-3318W962-07-SEL
**ISSUE DATE:** 11-17-06

**ITEM FOUR**
**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS.**

**LIABILITY COVERAGE – RATING BASIS, COST OF HIRE**

| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | FACTOR (If Liab. Cov. is primary) | PREMIUM |
|---|---|---|---|---|
| VA | $ IF ANY    XS | $    2.889 | $ | $    76 |
| | | | **TOTAL PREMIUM** $ | 76 |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

**PHYSICAL DAMAGE COVERAGE**

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | RATE PER EACH $100 ANNUAL COST OF HIRE | PREMIUM |
|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $  100  DED. FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | $ IF ANY | $    .351 | $    .19 |
| SPECIFIED CAUSES OF LOSS | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $     DED. FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. | $ | $ | $ |
| COLLISION | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $  250  DED. FOR EACH COVERED AUTO. | $ IF ANY | $    .556 | $    19 |
| | | | **TOTAL PREMIUM** $ | 38 |

**ITEM FIVE**

**SCHEDULE FOR NON-OWNERSHIP LIABILITY**

| NAMED INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM |
|---|---|---|---|
| Other than a Social Service Agency | Number of Employees | 0 | $    105 |
| | Number of Partners | | |
| Social Service Agency | Number of Employees | | |
| | Number of Volunteers | | |
| | | **TOTAL PREMIUM** | $    105 |

PRODUCER                                          OFFICE

CA T0 03 04 05      Copyright, 2005. The St. Paul Travelers Companies. All Rights Reserved.      Page 1 of 1
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

 **TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

**VIRGINIA SUPPLEMENTAL DECLARATIONS**

**POLICY NUMBER:** BA-3318W962-07-SEL
**ISSUE DATE:** 11-17-06

### SCHEDULE OF COVERED AUTOS YOU OWN

| Covered Auto No. | COVERAGES - PREMIUMS, LIMITS AND DEDUCTIBLES (Absence of a deductible or limit in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead) | | | | |
|---|---|---|---|---|
| | MEDICAL EXPENSE AND INCOME LOSS BENEFITS See CA2246 for Applicable Limit of Insurance | | UNINSURED MOTORISTS | | |
| | Limit Stated in Each Med. Exp. and Inc. Loss benefits End. For each Person | Premium | Limit | Premium |
| 1 | SECTION I MEDICAL EXPENSE BENEFITS | $        43 | $ 1,000,000 | $        57 |
| 2 | SECTION I MEDICAL EXPENSE BENEFITS | 43 | 1,000,000 | 52 |
| 3 | SECTION I MEDICAL EXPENSE BENEFITS | 23 | 1,000,000 | 52 |
| 4 | SECTION I MEDICAL EXPENSE BENEFITS | 43 | 1,000,000 | 52 |

### SCHEDULE FOR GROSS RECEIPTS RATING BASIS - LIABILITY COVERAGE - PUBLIC AUTO OR LEASING RENTAL CONCERNS

| Estimated Yearly ☐ Gross Receipts ☐ Mileage | RATES ☐ Per $100 of Gross Receipts ☐ Per Mile | | | PREMIUMS | | |
|---|---|---|---|---|---|---|
| | LIABILITY | MEDICAL EXPENSE BENEFITS | INCOME LOSS BENEFIT | LIABILITY | MEDICAL EXPENSE BENEFITS | INCOME LOSS BENEFIT |
| | $ | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ | $ . |
| | $ | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ | $ |
| TOTAL PREMIUMS | | | | $ | $ | $ |
| MINIMUM PREMIUMS | | | | $ | $ | $ |

PRODUCER                                             OFFICE

CA T0 58 01 04                                        Page 1 of 1

INCLUDES COPYRIGHTED MATERIAL OF
INSURANCE SERVICES OFFICE, WITH ITS
PERMISSION.   COPYRIGHT, INSURANCE
SERVICES OFFICE, 1985

EXPLANATION OF CERTAIN ENTRIES OR THE ABSENCE THEREOF ON CA TO 02

THE ABSENCE OF AN ENTRY IN PREMIUM SPACES FOR A COVERAGE SHALL MEAN THAT
    INSURANCE IS NOT AFFORDED FOR THE DESIGNATED AUTO.

THE ABBREVIATION 'ACV' IN THE 'LIMIT OF LIABILITY' SPACE SHALL MEAN 'ACTUAL
    CASH VALUE'.

THE ABBREVIATION 'BI' SHALL MEAN 'BODILY INJURY'.

THE ABBREVIATION 'GVW' SHALL MEAN 'GROSS VEHICLE WEIGHT'.

THE ABBREVIATION 'GCW' SHALL MEAN 'GROSS COMBINED WEIGHT'.

THE ABBREVIATION 'ADDED PIP' SHALL MEAN 'ADDED PERSONAL INJURY PROTECTION'
    OR 'EQUIVALENT NO-FAULT COVERAGE'.

THE ABBREVIATION 'BASIC PIP' SHALL MEAN 'BASIC PERSONAL INJURY PROTECTION'
    OR 'EQUIVALENT NO-FAULT COVERAGE'.

THE ABBREVIATION 'NDA' SHALL MEAN 'NO DEDUCTIBLE APPLIES'.

THE ABBREVIATION 'ME$100' SHALL MEAN 'MEDICAL EXPENSE $100'.

THE ABBREVIATION 'WL$200' SHALL MEAN 'WORK LOSS $200'.

THE ABBREVIATION 'CME&WL' SHALL MEAN 'COMBINED MEDICAL EXPENSE & WORK LOSS'.

THE ABBREVIATION 'I' SHALL MEAN 'DEDUCTIBLE APPLIES TO THE NAMED INSURED
    ONLY'.

THE ABBREVIATION 'I/R' SHALL MEAN 'DEDUCTIBLE APPLIES TO THE NAMED INSURED
    AND RELATIVES'.

THE ABBREVIATION 'PD' SHALL MEAN 'PROPERTY DAMAGE'.

THE ABBREVIATION 'SPEC CAUSES' SHALL MEAN 'SPECIFIED CAUSES OF LOSS
    COVERAGE' AS DEFINED IN THE POLICY.

OTHER ABBREVIATIONS DESIGNATED BELOW ARE DEFINED AS FOLLOWS
    THE ABBREVIATION 'SP' SHALL MEAN 'SPECIFIED CAUSES OF LOSS COVERAGE'.
    THE ABBREVIATION 'F' SHALL MEAN 'FIRE COVERAGE' ONLY.
    THE ABBREVIATION 'FT' SHALL MEAN 'FIRE & THEFT COVERAGE'.
    THE ABBREVIATION 'FTW' SHALL MEAN 'FIRE, THEFT & WINDSTORM COVERAGE'.
    THE ABBREVIATION 'LSP' SHALL MEAN 'LIMITED SPECIFIED CAUSES OF LOSS
        COVERAGE'.

THE ABBREVIATION 'MED PAY' SHALL MEAN 'MEDICAL PAYMENTS'.

THE ABBREVIATION 'NFRB CODE' SHALL MEAN 'NO FAULT RATING BASIS'.

THE ABBREVIATION 'PRIM' SHALL MEAN 'PRIMARY'.

THE ABBREVIATION 'XS' SHALL MEAN 'EXCESS'.

# TABLE OF CONTENTS

# BUSINESS AUTO COVERAGE FORM

Beginning on Page

SECTION I – COVERED AUTOS

Description Of Covered Auto Designation Symbols ................................................... 1
Owned Autos You Acquire After The Policy Begins ................................................. 2
Certain Trailers And Temporary Substitute Autos .................................................. 2

SECTION II – LIABILITY COVERAGE

Coverage .............................................................................................................. 2
Who Is An Insured ................................................................................................ 2
Coverage Extensions
    Supplementary Payments ................................................................................. 3
    Out of State ...................................................................................................... 3
Exclusions ............................................................................................................ 3
Limit of Insurance ................................................................................................ 5

SECTION III – PHYSICAL DAMAGE COVERAGE

Coverage .............................................................................................................. 5
Exclusions ............................................................................................................ 6
Limit of Insurance ................................................................................................ 7
Deductible ............................................................................................................ 7

SECTION IV – BUSINESS AUTO CONDITIONS

Loss Conditions
    Appraisal For Physical Damage Loss ................................................................ 7
    Duties in the Event Of Accident, Claim, Suit or Loss ......................................... 7
    Legal Action Against Us ................................................................................... 8
    Loss Payment – Physical Damage Coverage ..................................................... 8
    Transfer Of Rights Of Recovery Against Others To Us ...................................... 8
General Conditions
    Bankruptcy ....................................................................................................... 8
    Concealment, Misrepresentation Or Fraud ....................................................... 8
    Liberalization .................................................................................................... 8
    No Benefit To Bailee – Physical Damage Coverages ......................................... 8
    Other Insurance ............................................................................................... 8
    Premium Audit .................................................................................................. 9
    Policy Period, Coverage Territory ..................................................................... 9
    Two Or More Coverage Forms Or Policies Issued By Us .................................. 9

SECTION VI – DEFINITIONS ................................................................................ 9

Includes copyrighted material of Insurance Services Office, Inc. with it permission.
Copyrighted, Insurance Service Office, Inc. 1985.

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols |
|---|---|
| 1 = | Any "Auto" |
| 2 = | Owned "Autos" Only |

Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

3 = Owned Private Passenger "Autos" Only

Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins.

4 = Owned "Autos" Other Than Private Passenger "Autos" Only

Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins.

5 = Owned "Autos" Subject To No-Fault

Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged.

6 = Owned "Autos" Subject To A Compulsory Uninsured Motorists Law

Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

7 = Specifically Described "Autos"

Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three).

8 = Hired "Autos" Only

Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

9 = Nonowned "Autos" Only

Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1, 2, 3, 4, 5 or 6** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you

 © ISO Properties, Inc., 2000

COMMERCIAL AUTO

acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

C. **Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

## SECTION II – LIABILITY COVERAGE

A. **Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

      (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

      (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

      (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

      (5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

   c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

2. **Coverage Extensions**

   a. **Supplementary Payments**

      In addition to the Limit of Insurance, we will pay for the "insured":

      (1) All expenses we incur.

© ISO Properties, Inc., 2000

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All costs taxed against the "insured" in any "suit" against the "insured" we defend.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

**b. Out-Of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while

COMMERCIAL AUTO

performing duties related to the conduct of your business.

### 6. Care, Custody Or Control

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

### 7. Handling Of Property

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

### 8. Movement Of Property By Mechanical Device

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

### 9. Operations

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

### 10. Completed Operations

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your

contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

### 11. Pollution

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or ex-

© ISO Properties, Inc., 2000

pense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

**A. Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   **(1)** The covered "auto's" collision with another object; or

   **(2)** The covered "auto's" overturn.

   **b. Specified Causes Of Loss Coverage**

   Caused by:

   **(1)** Fire, lightning or explosion;

   **(2)** Theft;

   **(3)** Windstorm, hail or earthquake;

   **(4)** Flood;

   **(5)** Mischief or vandalism; or

   **(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c. Collision Coverage**

   Caused by:

   **(1)** The covered "auto's" collision with another object; or

   **(2)** The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   **a.** Glass breakage;

   **b.** "Loss" caused by hitting a bird or animal; and

   **c.** "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

COMMERCIAL AUTO

a. **Transportation Expenses**

We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

b. **Loss Of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

(1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

(2) Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

(3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

a. **Nuclear Hazard**

(1) The explosion of any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination, however caused.

b. **War Or Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

4. We will not pay for "loss" to any of the following:

a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

b. Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

c. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

d. Any accessories used with the electronic equipment described in Paragraph c. above.

Exclusions 4.c. and 4.d. do not apply to:

a. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such

© ISO Properties, Inc., 2000

equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

 © ISO Properties, Inc., 2000

COMMERCIAL AUTO

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary

to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that

© ISO Properties, Inc., 2000
CA 00 01 10 01

is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

6. **Premium Audit**

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

7. **Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

a. The United States of America;

b. The territories and possessions of the United States of America;

c. Puerto Rico;

d. Canada; and

e. Anywhere in the world if:

(1) A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

(2) The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

8. **Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V – DEFINITIONS**

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means a land motor vehicle, "trailer" or semitrailer designed for travel on public roads but does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement; or

2. Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

COMMERCIAL AUTO

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured";

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

**1.** A lease of premises;

**2.** A sidetrack agreement;

**3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "em-

© ISO Properties, Inc., 2000          **CA 00 01 10 01**

ployees", if the "auto" is loaned, leased or rented with a driver; or

   **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **2.** Vehicles maintained for use solely on or next to premises you own or rent;

   **3.** Vehicles that travel on crawler treads;

   **4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      **a.** Power cranes, shovels, loaders, diggers or drills; or

      **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

   **5.** Vehicles not described in Paragraphs **1.**, **2.**, **3.**, or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      **b.** Cherry pickers and similar devices used to raise or lower workers.

   **6.** Vehicles not described in Paragraphs **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **a.** Equipment designed primarily for:

      **(1)** Snow removal;

      **(2)** Road maintenance, but not construction or resurfacing; or

      **(3)** Street cleaning;

   **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

   **1.** Damages because of "bodily injury" or "property damage"; or

   **2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

   **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

COMMERCIAL AUTO

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES – BUSINESS AUTO COVERAGE FORM

For a covered "auto" licensed or principally garaged in Virginia, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. Paragraph **A. Coverage of Section II – Liability Coverage** is replaced by the following:

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We have the right and duty to defend any "suit" for such damages, even if the "suit" is groundless, false or fraudulent. However, we have no duty to defend "suits" for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

B. Paragraph **A.2. Coverage Extensions** of Section II – Liability Coverage is amended as follows:

1. Paragraphs **a.(3), a.(5)** and **a.(6)** of **Supplementary Payments** are replaced by the following:

   a. **Supplementary Payments**

   In addition to the Limit of Insurance, we will pay for the "insured":

   (3) The cost of bonds to release attachments in any "suit" we defend, but only for bond amounts within our Limit of Insurance.

   (5) All costs taxed against the "insured" in any "suit" we defend.

   (6) All interest on the full amount of any judgment that accrues after entry of judgment in any "suit" we defend; but our duty to pay interest ends when we have paid, offered to pay or de-

posited in court the part of the judgment that is within our Limit of Insurance.

2. Paragraph **a. Supplementary Payments** is amended by the addition of the following:

   a. **Supplementary Payments**

   In addition to the Limit of Insurance, we will pay for the "insured":

   (7) Prejudgment Interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

C. Paragraph **A.2.b.(1)** of **Section II – Liability Coverage** is replaced by the following:

2. **Coverage Extensions**

   b. **Out-Of-State Coverage Extensions**

   While a covered "auto" is away from the state where it is licensed we will:

   (1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used.

D. Paragraph **B. Exclusions** of Section II – Liability Coverage is amended as follows:

1. Paragraph **B.4. Employee Indemnification And Employer's Liability Exclusion** is replaced by the following:

   "Bodily Injury" to:

   a. An "employee" of the "insured" arising out of and in the course of employment by the "insured"; or

CA 01 16 03 04                © ISO Properties, Inc., 2003                Page 1 of 3

COMMERCIAL AUTO

    **b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

    **(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

    **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract".

**2.** Paragraph **B.5. Fellow Employee** Exclusion is deleted.

**3.** Paragraph **B.6. Care, Custody Or Control** Exclusion is replaced by the following:

"Property damage" to property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**4.** Paragraph **B.11. Pollution** Exclusion is replaced by the following:

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants". This exclusion does not apply if the discharge is sudden and accidental.

**E.** Paragraph **C. Limit Of Insurance** of Section II is replaced by the following:

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

**2.** We will apply the limit shown in the Declarations to first provide the separate limits required by Virginia law as follows:

    **(a)** $25,000 for "bodily injury" to any one person caused by any one "accident"; and

    **(b)** Subject to **2.(a)** above, $50,000 for "bodily injury" to two or more persons caused by any one "accident"; and

    **(c)** $20,000 for "property damage" caused by any one "accident".

This provision will not change the Limit of Insurance.

**F.** The **Business Auto Conditions** of Section IV are amended as follows:

**1.** Paragraph **A.1. Appraisal For Physical Damage Loss** is replaced by the following:

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of the "loss". If they fail to agree, they will submit their differences to the umpire. An appraisal decision will not be binding on either party. Each party will:

    **a.** Pay its chosen appraiser; and

    **b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2.** Paragraph **A.2.b.(3)** of the **Duties In The Event Of Accident, Claim Or Loss** Condition is replaced by the following:

    **b.** Additionally, you and any other involved "insured" must:

      **(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit". The "insured" will be deemed not to have cooperated with us only if his or her failure or refusal to do so harms our defense of an action for damages.

**3.** Paragraph **A.2.c.** of the **Duties In The Event Of Accident, Claim Or Loss** Condition is replaced by the following:

    **c.** If there is a "loss" to a covered "auto" or its equipment, you must also do the following, but only with respect to a Physical Damage claim:

      **(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

      **(2)** Do what is reasonably necessary to protect the covered "auto" from further damage. Also keep a record of

© ISO Properties, Inc., 2003
CA 01 16 03 04

your expenses for payment in the settlement claim.

   **(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

   **(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**4.** Paragraph **A.4.** of the **Loss Payment – Physical Damage Coverages Condition** is replaced by the following:

At our option, we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include:

   **(1)** The applicable sales and use tax for the damaged or stolen property;

   **(2)** Any applicable titling and license transfer fees incurred in obtaining a replacement vehicle in the event of a total "loss" to a covered "auto", and

   **(3)** Any applicable general average, salvage or disposal charges.

**5.** Paragraph **B.2. Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

Coverage for your claim under this Coverage Form is void in any case of fraud by you at any time as it relates to the Coverage Form. It is also void if you, at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**6.** Paragraph **B.5.b.** of the **Other Insurance** Condition is replaced by the following:

For Hired Auto Physical damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is deemed to be a covered "auto" you don't own.

**7.** Paragraph **B.8.** of the **Two Or More Coverage Forms Or Policies Issued By Us** Condition is deleted.

**G. Section V – Definitions** is amended as follows:

**1.** The "Covered pollution cost or expense" definition is deleted.

**2.** Exceptions **b.** and **c.** to the "insured contract" definition are deleted.

**3.** The definition of "Suit" is replaced by the following:

"Suit" means a civil proceeding in which damages because of "bodily injury" or "property damage", to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

**H. Changes In Endorsements**

**1.** All references to Auto Medical Payments are replaced in the endorsements by Medical Expense Benefits.

**2.** All references to personal injury protection (no-fault) and "covered pollution cost or expense" in any endorsement do not apply.

© ISO Properties, Inc., 2003

COMMERCIAL AUTO

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES IN POLICY – CANCELLATION AND NONRENEWAL

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Virginia, this endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> BUSINESS AUTO PHYSICAL COVERAGE FORM
> GARAGE COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM
> TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** If you are an individual and a covered "auto" you own is of the private passenger type and not used in your occupation, profession or business, other than farming, and is not used as a public or livery conveyance; and your business shown in the Declarations is not a garage, sales agency, repair shop, service station or public parking place, then the **Cancellation** Common Policy Condition does not apply. The following Conditions apply instead:

**1. Cancellation**

**a.** You or your attorney-in-fact may cancel the policy by returning to us or by mailing to us advance written notice of the date cancellation is to take effect.

**b.** We may cancel this policy by mailing or delivering to you written notice of cancellation at least:

**(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 45 days before the effective date of cancellation if we cancel for any other reason.

**c.** When this policy is in effect 60 days or more or is a renewal or continuation policy, we may only cancel for one or more of the following reasons:

**(1)** Nonpayment of premium.

**(2)** Your driver's license or that of a driver who lives with you or customarily uses the covered "auto" has been suspended or revoked during the policy period or, if the policy is a renewal, during its policy period or the

90 days immediately preceding the last effective date.

**(3)** You or your attorney-in-fact have notified us that you have changed your legal residence to a state other than Virginia and your covered "auto" will be principally garaged in your new state.

**(4)** We replace this policy with another one providing similar coverages and the same limits for the covered "auto". The replacement policy will take effect when this policy is canceled and will end a year after this policy begins or on this policy's expiration date, whichever is earlier.

**d.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**e.** If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. However, making or offering to make the refund is not a condition of cancellation. If you or your attorney-in-fact cancel, the refund, if any, will be computed in accordance with our customary short rate procedure. If we cancel, the refund, if any, will be computed pro rata.

**f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**2. Nonrenewal**

**a.** If we decide not to renew or continue this policy, we will mail you notice at least 45

CA 02 68 11 02                    © ISO Properties, Inc., 2002                    Page 1 of 2

COMMERCIAL AUTO

days before the end of the policy period. If the policy is written for a period of less than one year or without a fixed expiration date, we will have the right not to renew or continue a particular coverage only at the end of any six month period following its original effective date.

**b.** If we or our agent offer to renew or continue this policy and you or your attorney-in-fact do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you or your attorney-in-fact have not accepted our offer.

**3. Mailing Of Notices**

**a.** Any notice of cancellation or nonrenewal will be mailed to your last known address by certificate of mailing, provided we retain a copy of said notice, or by registered or certified mail, pursuant to Sections 38.2-231 and 38.2-2208 of the Code of Virginia. However, we may deliver any notice instead of mailing it.

**b.** The notice of cancellation or nonrenewal will state the specific reason(s) for cancellation or nonrenewal, except when a policy is being canceled or nonrenewed for nonpayment of premium.

**B.** For all other risks not described in Paragraph **A.** above:

**1.** Paragraphs **1.** and **2.** of the **Cancellation** Common Policy Condition are replaced by the following:

**a.** You or your attorney-in-fact may cancel the policy by mailing or delivering to us advance written notice of the date cancellation is to take effect.

**b.** We may cancel the policy by mailing or delivering to you written notice of cancellation, stating the reason(s) for cancellation at least:

**(1)** 15 days before the effective date if we cancel for nonpayment of premium; or

**(2)** 45 days before the effective date of cancellation if we cancel for any other reason.

**2.** Paragraph **3.** of the **Cancellation** Common Policy Condition does not apply.

**3.** The following Conditions are added:

**a. Nonrenewal**

**(1)** We may nonrenew the policy by mailing or delivering to you written notice of nonrenewal, stating the reason for nonrenewal, at least:

**(a)** 15 days before the expiration date of the policy if we nonrenew for nonpayment of premium; or

**(b)** 45 days before the expiration date of the policy if we nonrenew for any other reason.

**(2)** If we or our agent offer to renew or continue this policy and you or your attorney-in-fact do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you or your attorney-in-fact have not accepted our offer.

**b. Mailing Of Notices**

Any notice of cancellation or nonrenewal will be mailed to your last known address by certificate of mailing, provided we retain a copy of said notice, or by registered or certified mail pursuant to Sections 38.2-231 and 38.2-2208 of the Code of Virginia. However, we may deliver any notice instead of mailing it.

     © ISO Properties, Inc., 2002     **CA 02 68 11 02**

COMMERCIAL AUTO

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UNINSURED MOTORISTS ENDORSEMENT
# (VIRGINIA)

**A. Words And Phrases With Special Meaning**

The following words and phrases have special meaning throughout this endorsement and appear in quotation marks when used:

1. "You" and "your" mean the person or organization shown as the named insured in ITEM ONE of the declarations.

2. "We", "us", and "our" mean the company providing insurance.

3. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage" the "insured" neither expected nor intended.

4. "Available for payment" means the amount of liability insurance coverage applicable to the claim of the injured person for "bodily injury" or "property damage" reduced by the payment of any other claims arising out of the same "accident".

5. "Bodily injury" means bodily injury, sickness or disease including death resulting from any of these.

6. "Covered auto" means a motor vehicle, or a "temporary substitute", with respect to which the "bodily injury" or "property damage" liability coverage of the policy applies.

7. "Family member" means a person related to "you" by blood, marriage or adoption who is a resident of "your" household, including a ward or foster child.

8. "Insured" means any person or organization qualifying as an insured in the **Who Is An Insured** section of this endorsement, including the personal representative of any insured. Except with respect to "our" Limit Of Liability, the insurance afforded applies separately to each insured who is seeking coverage under this endorsement.

9. "Loss" means direct and accidental damage or loss.

10. "Property damage" means damage to or loss of use of tangible property.

11. "Occupying" means in, upon, using, getting in, on, out of or off.

12. "Temporary substitute" means a motor vehicle that is being used in place of a "covered auto". The "covered auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

13. "Underinsured motor vehicle" means a motor vehicle, when, and to the extent that, the total amount of "bodily injury" and "property damage" coverage applicable to the operation or use of the motor vehicle and "available for payment" for such "bodily injury" or "property damage", including all bonds or deposits of money or securities made pursuant to Article 15 (Section 46.2-435 et seq.) of Chapter 3 of Title 46.2 of the Code of Virginia, is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the motor vehicle.

14. "Uninsured motor vehicle" means a motor vehicle:

   a. For which:

      1. There is no "bodily injury" liability insurance and "property damage" liability insurance in the amounts specified by Section 46.2-472 of the Code of Virginia.

      2. There is such insurance but the insurer writing the insurance denies coverage for any reason whatsoever, including failure or refusal of the insured to cooperate with the insurer.

      3. There is no bond or deposit of money or securities in lieu of such insurance.

      4. The owner of the vehicle has not qualified as a self-insurer under the provisions of Section 46.2-368, or

      5. The owner or operator of the motor vehicle is immune from liability for negligence under the laws of the Commonwealth or the United States. A motor vehicle shall be deemed uninsured if its owner or operator is unknown.

   If the owner or operator of any motor vehicle that causes "bodily injury" or "prop-

© ISO Properties, Inc., 2002

COMMERCIAL AUTO

erty damage" to the "insured" is unknown, and if the damage or injury results from an "accident" where there has been no contact between that motor vehicle and the motor vehicle occupied by the "insured", or where there has been no contact with the person of the "insured" if the "insured" was not "occupying" a motor vehicle, then for the "insured" to recover under this endorsement pursuant to Paragraph **a.** of this definition, the "accident" shall be reported promptly to either:

1. The insurer or;

2. A law-enforcement officer having jurisdiction in the county or city in which the "accident" occurred. If it is not reasonably practicable to make the report promptly, the report shall be made as soon as reasonably practicable under the circumstances.

   b. Which is an "underinsured motor vehicle".

**B. We Will Pay**

"We" will pay in accordance with the Virginia Uninsured Motorists Law, all sums the "insured" is legally entitled to recover as damages from the owner or operator of an "uninsured motor vehicle".

**C. We Will Not Cover – Exclusions**

This insurance does not apply to:

1. A "bodily injury" or "property damage" claim settled by the "insured" without "our" consent with anyone who may be legally liable.

2. The direct or indirect benefit of any insurer of property.

3. The first $200 of the total amount of "property damage" as the result of any one "accident" involving an unidentifiable driver or owner of an "uninsured motor vehicle". This exclusion does not apply if the owner or operator of the "uninsured motor vehicle" causing the damage can be identified.

4. Anyone using the "covered auto" without a reasonable belief that the person is entitled to do so.

**D. Who Is Insured**

1. "You" or any "family member".

2. Anyone else "occupying" a "covered auto".

3. Anyone for damages he or she is entitled to recover because of "bodily injury" to which this coverage applies, sustained by another "insured" under **1.** or **2.** above.

**E. Our Limit Of Liability**

1. Regardless of the number of "covered autos", "insureds", claims made or motor vehicles involved in the "accident", the most "we" will pay for all damages resulting from any one "accident" is the limit of **Uninsured Motorists Insurance** shown in the Schedule or Declarations. However, if more than one "covered auto" is involved in the same "accident", the limit of Uninsured Motorists Insurance shown in the Schedule or Declarations will apply separately to each of these "covered autos". Such limit of insurance shall first provide the separate limits required by the Virginia Motor Vehicle Safety Responsibility Act.

2. Except with respect to an "underinsured motor vehicle", damages otherwise payable under this coverage:

   a. Shall be reduced by all sums paid because of "bodily injury" or "property damage" by or on behalf of persons or organizations who may be legally responsible.

   b. With respect to an employee of a self-insured employer, shall be reduced by all sums paid or payable because of "bodily injury" under a workers' compensation law.

**F. Conditions**

The conditions applicable to this coverage are as follows:

1. Other Insurance

   a. For "bodily injury" to an "insured" while "occupying" a motor vehicle that is not a "covered auto", this coverage shall apply only as excess insurance over any other similar insurance available to that "insured" and applicable to that motor vehicle as primary insurance. However, this paragraph does not apply to an "underinsured motor vehicle".

   b. Except as provided in Paragraph **a.** above, if the "insured" has other similar "bodily injury" insurance available to him or her and applicable to the "accident", "we" shall not be liable for a greater proportion of any "loss" to which this coverage applies than the limit of liability for this coverage bears to the sum of the applicable limits of liability of this insurance and such other insurance. However, this provision does not apply to an "underinsured motor vehicle".

© ISO Properties, Inc., 2002

c.  For "property damage", **Uninsured Motorists Insurance** is excess over all other collectible insurance of any kind applicable to the "property damage".

d.  If the injured person is entitled to underinsured motorists coverage under more than one policy, the following order of priority applies and any amount "available for payment" shall be credited against such policies in the following order of priority:

(1) The policy covering a motor vehicle "occupied" by the injured person at the time of the "accident".

(2) The policy covering a motor vehicle not involved in the "accident" under which the injured person is a named insured.

(3) The policy covering a motor vehicle not involved in the "accident" under which the injured person is other than a named insured.

If there is more than one insurer providing coverage under one of the payment priorities set forth in Paragraph **d.** above, we will pay only "our" share of the "loss". "Our" share is the proportion that "our" limit of liability bears to the total of all limits applicable on the same level of priority.

## 2.  Our Right To Recover From Others

If "we" make any payment, "we" are entitled to recover what "we" paid from other parties. Any person to or for whom "we" make payment must transfer to "us" his or her rights of recovery against any other party. The person must do everything necessary to secure these rights and must do nothing that would jeopardize them.

## 3.  Legal Action Against Us

No legal action may be brought against "us" until there has been full compliance with all the terms of the policy.

## 4.  Changes

If a change requires a premium adjustment, "we" will adjust the premium as of the effective date of the change.

## 5.  Transfer Of Rights And Duties

"Your" rights and duties under this endorsement may not be assigned without "our" written consent.

## 6.  Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate shall not relieve "us" of any obligations under this endorsement.

## 7.  Policy Period, Coverage Territory

Under this endorsement, "we" cover "accidents" and "losses" occurring:

a.  During the policy period shown in the Declarations; and

b.  Within the coverage territory.

The coverage territory is:

a.  The United States of America

b.  The territories and possessions of the United States of America.

c.  Puerto Rico; and

d.  Canada

"We" also cover "loss" to, or "accidents" involving, a "covered auto" while being transported between any of these places.

## 8.  Concealment, Misrepresentation, Or Fraud

Coverage for "your" claim under this endorsement is void in any case of fraud by "you" at any time as it relates to this coverage. It is also void if "you", at any time, intentionally conceal or misrepresent a material fact concerning:

a.  This endorsement;

b.  The "covered auto";

c.  "Your" interest in the "covered auto"; or

d.  A claim under this coverage.

## 9.  Premium Audit

a.  The estimated premium for this endorsement is based on the exposures "you" told "us" "you" would have when this policy began. "We" will compute the final premium due when "we" determine "your" actual exposures. The estimated total premium will be credited against the final premium due and the First Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the First Named Insured will get a refund.

b.  If this policy is issued for more than one year, the premium for this endorsement will be computed annually, based on "our" rates or premiums in effect at the beginning of each year of the policy.

COMMERCIAL AUTO

**10. Arbitration**

    a.  If "we" and an "insured" disagree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.

      "You" are not required to arbitrate; however, if both parties agree to arbitrate, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. "We" will pay all arbitration expenses if "we" request arbitration. If an "insured" requests the arbitration, each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

    b.  Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision can be reached by two of the arbitrators but will not be binding.

 © ISO Properties, Inc., 2002 CA 21 21 11 02

POLICY NUMBER: **BA-3318W962-07-SEL**

COMMERCIAL AUTO
ISSUE DATE: 11-17-06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA MEDICAL EXPENSE AND INCOME LOSS BENEFITS ENDORSEMENT

For a covered "auto" licensed or principally garaged in Virginia, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## SCHEDULE

The insurance afforded by this endorsement is only for the coverage(s) indicated by a specific premium charge in the Declarations or in the Schedule.

| Coverages | Limit Of Insurance | Premium |
|---|---|---|
| **Section I** **Medical Expense Benefits** | $    1,000  each person | $        152 |
| **Section II** **Income Loss Benefits** | $100 per week each person | $ |
| | Total Premium  $ | 152 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

## SECTION I – MEDICAL EXPENSE BENEFITS

**A. Coverage**

We will pay, in accordance with Section 38.2-2201 or 46.2-465 of the Virginia Code, to a covered injured person, "medical expense" benefits as a result of "bodily injury" caused by an "accident" and arising out of the ownership, maintenance or use of a "motor vehicle" as a "motor vehicle".

**B. Exclusions**

This insurance does not apply to "bodily injury":

1. Sustained by any person who intentionally injures himself or herself;

2. Sustained by any person to the extent that benefits for that injury are in whole or in part payable under any workers' compensation or similar law;

3. Sustained by the "named insured" or any "family member" while "occupying" any motor vehicle owned by or furnished or available for regular use by such "named insured" or any

"family member" and that is not a "covered auto"; or

4. Due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to war.

**C. Limit Of Insurance**

1. Regardless of the number of claims made or "covered autos" to which this insurance applies, the most we will pay for "medical expense" benefits to "insured" who sustains "bodily injury" in any one "accident" is the Limit Of Insurance for "medical expense" benefits shown in the Schedule or Declarations.

2. No "insured" will be entitled to collect under "medical expense" Coverage, more than his or her actual "medical expenses" incurred within three years after the date of the "accident", from this or any other automobile insurance policy or combination of those policies providing "medical expense" insurance applicable to that "accident".

© ISO Properties, Inc., 2002

COMMERCIAL AUTO

## SECTION II – INCOME LOSS BENEFITS

### A. Coverage

We will pay, in accordance with Section 38.2-2201 or 46.2-465 of the Virginia Code, to a covered injured person, "income loss" benefits as a result of "bodily injury" caused by an "accident" and arising out of the ownership, maintenance or use of a motor vehicle.

### B. Exclusions

Exclusions **1.**, **2.**, **3.** and **4.** under Section I of this endorsement apply to Section II.

### C. Limit Of Insurance

1. Regardless of the number of claims made or "covered autos" to which this insurance applies, the most we will pay for "Income Loss" Benefits to any "insured" who sustains "bodily injury" in any one "accident" is the Limit Of Insurance shown in the Schedule or Declarations from the first work day lost as a result of the "accident" up to the date that the "insured" is able to return to his or her usual occupation or the date of death of that "insured", whichever occurs first.

2. No "insured" will be entitled to collect more than his or her actual "income loss" sustained within one year after the date of the "accident", from this or any other automobile insurance policy or combination of those policies providing "income loss" benefits insurance applicable to that "accident".

## SECTION III – CONDITIONS

The following Conditions are applicable to both Sections I and II, except as noted:

### 1. Notice

In the event of an "accident", written notice containing particulars sufficient to identify the "insured", and also reasonably obtainable information respecting the time, place and circumstances of the "accident" must be given by or on behalf of the "insured" to us or our legal representatives as soon as possible.

If an "insured" or his or her legal representative institutes legal action for damages for "bodily injury", he or she must promptly give us a copy of the summons and complaint or other process served in connection with the legal action.

### 2. Legal Action Against Us

No one may bring a legal action against us until there has been full compliance with all the terms of this endorsement.

### 3. Medical Reports; Proof Of Claim

As soon as practicable, the "insured" or someone on his or her behalf must give us written proof of claim, under oath if required, including full particulars of the nature and extent of injuries and treatment received or contemplated. He or she must also furnish us with any other information that may assist us in determining the amount due and payable. The "insured" must submit to physical examinations, at our expense, by physicians we select when and as often as we may require.

The "insured", or in the event of his or her incapacity or death, his or her legal representative, shall upon each of our requests, execute authorization to enable us to obtain medical reports, copies of records and information with respect to loss of income. We may require that the "insured", as a condition for receiving "income loss" benefits, cooperate in furnishing us reasonable medical proof of his or her inability to work.

### 4. Transfer Of Rights Of Recovery Against Others To Us

With respect to Section II only, if any person or organization to or for whom we make payment for "income loss" benefits under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

## SECTION IV – DEFINITIONS

As used in this endorsement:

1. "Covered auto" means a motor vehicle with respect to which:

   a. The "named insured" is the owner;

   b. The "bodily injury" liability or "property damage" liability coverage of the Coverage Form applies; and

   c. The insurance provided under this endorsement applies and for which a specific premium has been charged.

2. "Family member" means a person related to the "named insured" by blood, marriage or adoption who is a resident of the "named insured's" household, including a ward or foster child.

3. "Income loss" means an amount equal to the loss of income incurred by an "insured",

usually engaged in a remunerative occupation, within one year after the date of the "accident", and as a result of disability caused by the "accident".

4. "Insured" means:

    a. The "named insured" or any "family member" who sustains "bodily injury" while "occupying" a motor vehicle, or if struck by a motor vehicle while not "occupying" a motor vehicle; or

    b. Any other person who sustains "bodily injury" while "occupying" a "covered auto".

5. "Medical expense" means all reasonable and necessary expenses for medical, chiropractic, hospital, x-ray, professional nursing, dental, surgical, ambulance, prosthetic and rehabilitation services, and funeral expenses, incurred within three years after the date of the "accident".

6. "Named insured" means the individual or organization designated in the Schedule or this endorsement and if not designated therein, means the individual or organization named in Item 1. of the Declarations of the policy.

7. "Occupying" means in, upon, getting in, on, out of, off or using.

## SECTION V – MEDICAL EXPENSE AND INCOME LOSS BENEFITS – INDIVIDUAL NAMED INSURED

If "you" are an individual and a "covered auto" "you" own is of the "private passenger type", the provisions of this endorsement apply, except that Paragraph **C. Limit Of Insurance** of Section **I** and **II** of this endorsement are replaced by the following:

**C. Limit Of Insurance**

Regardless of the number of "covered autos", "insureds" or claims made, the most we will pay for "bodily injury" for each "insured" injured in any one "accident" shall be determined as follows:

1. If there is only one "covered auto" of the "private passenger type", the most we will pay is the limit of Medical Expenses and "Income Loss" Benefits shown in the Schedule or Declarations.

2. If there is more than one "covered auto" of the "private passenger type", our limit of liability is the sum of the highest limits applicable to "covered autos" of the highest limits applicable to "covered autos" of the "private passenger type", subject to a maximum of four such "autos".

© ISO Properties, Inc., 2002

COMMERCIAL AUTO

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDATORY ENDORSEMENT
# VIRGINIA

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**C.   SECTION V – DEFINITIONS**, Definition **F.** ("Employee") is deleted and replaced by the following definition:

F.   "Employee" includes a "leased worker" and a "temporary worker".

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, with its permission.

# INTERLINE
# ENDORSEMENTS

# INTERLINE
# ENDORSEMENTS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

© ISO Properties, Inc., 2001

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

    © ISO Properties, Inc., 2001    IL 00 21 07 02

 **TRAVELERS**
900 WATERVLIET-SHAKER ROAD SUITE 220
ALBANY  NY                         12205

**LENDER'S CERTIFICATE OF
INSURANCE — FORM A**
Issue Date: 11-17-06

**1.  CERTIFICATE HOLDER:**

Policy Number: BA-3318W962-07-SEL

SOUTHERN FINANCIAL BANK

3124 W. BROAD STREET

RICHMOND                    VA 23230

**2.  NAMED INSURED:** U.S. VITTLES, INC. T/A
BUZ & NED'S REAL BARBEQUE
1119 NORTH BOULEVARD

RICHMOND                 VA 23230

**3.  CERTIFICATION -** We certify that we have issued the policy to the Named Insured for the policy period as identified in this Certificate. Notwithstanding any requirements, terms or conditions of any contract or other document with respect to which this Certificate may be issued, the insurance is that which we customarily provide for the coverage indicated in item 6. below. This Certificate is issued as a matter of information only and does not amend, extend or alter the coverage afforded by the policy.

**4.  POLICY PERIOD:** 01-01-07  to  01-01-08

**5.  INSURING COMPANY:**  TRAVELERS INDEMNITY COMPANY OF AMERICA

**6.  INSURANCE**

Vehicles        -   The policy names the Certificate Holder as a Loss Payee
according to its Loss Payable Clause (see item 7. Special
Provisions), for the vehicles described below:

Coverages:      A = Comprehensive
B = Specified Perils
C = Collision

| DESIGNATED VEHICLE(S) | | COVERAGES AND DEDUCTIBLE | |
|---|---|---|---|
| 1999 DODGE | 1B7MF3369XJ561139 | A - $  250 | C - $  500 |
| 1998 DODGE RAM VAN | 2B7JB21Z4WK113268 | A - $  250 | C - $  500 |

IL T0 10 12 86

Page 1 of 2

**LENDER'S CERTIFICATE OF**
**INSURANCE — FORM A**

Policy Number: BA-3318W962-07-SEL

7. **SPECIAL PROVISIONS:**

**LOSS PAYABLE CLAUSE**

A. We will pay you and the loss payee named in the policy for "loss" to a covered "auto", as interest may appear.

B. The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

C. We may cancel the policy as allowed by the CANCELLATION Common Policy Condition. Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

D. If we make any payment to the loss payee, we will obtain their rights against any other party notice.

8. **NOTICE OF CANCELLATION** — If we elect to cancel the policy or the Coverage Part which applies to the property described in item 6. of this Certificate, we will mail to the Certificate Holder written notice at least 10 days before the date our cancellation takes effect. If more than 10 days notice to the Certificate Holder is provided in this Certificate or is required by law, we will mail written notice according to such provision or requirement.

9. **DEFINITIONS** — As defined in the policy, the words "we," "us" and "our" refer to the Company providing this insurance. The words "you" and "your" refer to the Named Insured shown in the Declarations of the policy.

**COUNTERSIGNED BY:**

_____
Authorized Representative

IL T0 10 12 86

 **TRAVELERS**
900 WATERVLIET-SHAKER ROAD SUITE 220
ALBANY  NY                    12205

**LENDER'S CERTIFICATE OF
INSURANCE—FORM A**
Issue Date: 11-17-06

**1.  CERTIFICATE HOLDER:**

Policy Number: BA-3318W962-07-SEL

BANK OF AMERICA

PO BOX 2759

JACKSONVILLE            FL 32203-2759

**2.  NAMED INSURED:**  U.S. VITTLES, INC. T/A
BUZ & NED'S REAL BARBEQUE
1119 NORTH BOULEVARD

RICHMOND            VA 23230

**3.  CERTIFICATION -** We certify that we have issued the policy to the Named Insured for the policy period as identified in this Certificate. Notwithstanding any requirements, terms or conditions of any contract or other document with respect to which this Certificate may be issued, the insurance is that which we customarily provide for the coverage indicated in item 6. below. This Certificate is issued as a matter of information only and does not amend, extend or alter the coverage afforded by the policy.

**4.  POLICY PERIOD:** 01-01-07  to  01-01-08

**5.  INSURING COMPANY:**  TRAVELERS INDEMNITY COMPANY OF AMERICA

**6.  INSURANCE**

Vehicles       - The policy names the Certificate Holder as a Loss Payee
according to its Loss Payable Clause (see item 7. Special
Provisions), for the vehicles described below:

Coverages:      A = Comprehensive
B = Specified Perils
C = Collision

DESIGNATED VEHICLE(S)                    COVERAGES AND DEDUCTIBLE
2005 MINI COOPER S   WMWRE33575TL15642   A - $    250   C - $    500

**IL T0 10 12 86**                                                    Page 1 of 2

**LENDER'S CERTIFICATE OF
INSURANCE – FORM A**

Policy Number: BA-3318W962-07-SEL

7. **SPECIAL PROVISIONS:**

**LOSS PAYABLE CLAUSE**

A. We will pay you and the loss payee named in the policy for "loss" to a covered "auto", as interest may appear.

B. The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

C. We may cancel the policy as allowed by the CANCELLATION Common Policy Condition. Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

D. If we make any payment to the loss payee, we will obtain their rights against any other party notice.

8. **NOTICE OF CANCELLATION** — If we elect to cancel the policy or the Coverage Part which applies to the property described in item 6. of this Certificate, we will mail to the Certificate Holder written notice at least 10 days before the date our cancellation takes effect. If more than 10 days notice to the Certificate Holder is provided in this Certificate or is required by law, we will mail written notice according to such provision or requirement.

9. **DEFINITIONS** — As defined in the policy, the words "we," "us" and "our" refer to the Company providing this insurance. The words "you" and "your" refer to the Named Insured shown in the Declarations of the policy.

COUNTERSIGNED BY:

_____
Authorized Representative

IL T0 10 12 86

 **TRAVELERS**
900 WATERVLIET-SHAKER ROAD SUITE 220
ALBANY  NY                    12205

**LENDER'S CERTIFICATE OF
INSURANCE – FORM A**
Issue Date: 11-17-06

**1.  CERTIFICATE HOLDER:**                    Policy Number: BA-3318W962-07-SEL

> DAIMLER CHRYSLER FINANCIAL SERVICE
> AMERICAS, LLC
> 1011 WARRENVILLE RD
> STE 600
> LISLE              IL 60532

**2.  NAMED INSURED:** U.S. VITTLES, INC. T/A
BUZ & NED'S REAL BARBEQUE
1119 NORTH BOULEVARD

RICHMOND                    VA 23230

**3.  CERTIFICATION -** We certify that we have issued the policy to the Named Insured for the policy period as identified in this Certificate. Notwithstanding any requirements, terms or conditions of any contract or other document with respect to which this Certificate may be issued, the insurance is that which we customarily provide for the coverage indicated in item 6. below. This Certificate is issued as a matter of information only and does not amend, extend or alter the coverage afforded by the policy.

**4.  POLICY PERIOD:** 01-01-07  to  01-01-08

**5.  INSURING COMPANY:**  TRAVELERS INDEMNITY COMPANY OF AMERICA

**6.  INSURANCE**

Vehicles          –  The policy names the Certificate Holder as a Loss Payee
according to its Loss Payable Clause (see item 7. Special
Provisions), for the vehicles described below:

Coverages:        A = Comprehensive
B = Specified Perils
C = Collision

DESIGNATED VEHICLE(S)                    COVERAGES AND DEDUCTIBLE
2006 DODGE SPRINTER   WD0PD544365888002   A - $   250   C - $   500

IL T0 10 12 86                                              Page 1 of 2

**LENDER'S CERTIFICATE OF
INSURANCE—FORM A**

Policy Number: BA-3318W962-07-SEL

7.  **SPECIAL PROVISIONS:**

### LOSS PAYABLE CLAUSE

A.  We will pay you and the loss payee named in the policy for "loss" to a covered "auto", as interest may appear.

B.  The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

C.  We may cancel the policy as allowed by the CANCELLATION Common Policy Condition. Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

D.  If we make any payment to the loss payee, we will obtain their rights against any other party notice.

8.  **NOTICE OF CANCELLATION —** If we elect to cancel the policy or the Coverage Part which applies to the property described in item 6. of this Certificate, we will mail to the Certificate Holder written notice at least 10 days before the date our cancellation takes effect. If more than 10 days notice to the Certificate Holder is provided in this Certificate or is required by law, we will mail written notice according to such provision or requirement.

9.  **DEFINITIONS —** As defined in the policy, the words "we," "us" and "our" refer to the Company providing this insurance. The words "you" and "your" refer to the Named Insured shown in the Declarations of the policy.

**COUNTERSIGNED BY:**

_____

Authorized Representative

# POLICYHOLDER NOTICES

# IMPORTANT NOTICE REGARDING INDEPENDENT AGENT AND BROKER COMPENSATION

For information about how St. Paul Travelers compensates independent agents and brokers, please visit www.StPaulTravelers.com, or you may request a written copy from Marketing at One Tower Square, 2GSA, Hartford, Connecticut 06183.

**POLICYHOLDER NOTICES**

# BUSINESS AUTO INSURANCE
# REVISIONS TO THE BUSINESS AUTO COVERAGE FORM

## VIRGINIA

## IMPORTANT NOTICE TO POLICYHOLDERS

## PLEASE READ THIS NOTICE CAREFULLY

We are renewing your Business Auto policy with a new coverage form using simplified language. This is a summary of the major changes in your Business Auto Coverage Form. It contains a brief synopsis of the significant changes, broadenings, and restrictions that were made in the Business Auto Coverage Form and significant broadenings and restrictions that were made in the Coverage Endorsements referenced below. It does not attempt to include every clarification or editorial change made in the Business Auto Coverage Form or the referenced endorsements. The summary is organized by individual Coverage Form and Coverage Endorsement, **however, not all Coverage Endorsements are included in a particular policy.**

**NO COVERAGE IS PROVIDED BY THIS SUMMARY, NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISION OF YOUR POLICY. YOU SHOULD READ YOUR ENTIRE POLICY CAREFULLY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED AND TO DETERMINE YOUR RIGHTS AND DUTIES. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS SUMMARY, THE PROVISIONS OF THIS POLICY SHALL PREVAIL.**

**CONTACT YOUR AGENT WITH ANY QUESTIONS ABOUT THE NEW COVERAGE FORM. YOUR AGENT CAN ALSO HELP YOU IF YOU DESIRE ANY CHANGES TO YOUR POLICY.**

### BUSINESS AUTO COVERAGE FORM

SIGNIFICANT CHANGES TO THE BUSINESS AUTO COVERAGE FORM **(CA 00 01 10 01)**

1.  The format of your new policy is very different. Your new policy contains five Sections instead of six Parts. The new Sections organize the policy provisions in a different order. Many policy provisions have different titles. Here are some examples: The coverage provisions formerly identified as **WE WILL ALSO PAY** in your old policy have been placed into paragraphs titled **Coverage Extensions** in the new policy. **Out-Of-State Coverage Extensions** are now found under the Liability Coverage Extensions section of the new policy. Old policy provisions titled **PART III – WHERE AND WHEN THIS POLICY COVERS** have been moved to the **BUSINESS AUTO CONDITIONS** Section of your new policy and renamed **Policy Period, Coverage Territory.**

2.  Words and Phrases with special meaning in your new policy are identified with quotation marks rather than boldface type and are specifically described in Section V – Definitions of your new policy.

3.  The following Definitions have been added to your new policy: "covered pollution cost or expense", "diminution in value", "employee", "insured contract", "leased worker", "pollutants", "suit", and "temporary worker".

4.  The Definition of "Mobile Equipment" has been significantly revised. Many types of street sweepers or street cleaners are no longer considered "mobile equipment". Vehicle licensing is no longer a criteria used to differ-

entiate between an "auto" and "mobile equipment". Vehicles that travel on crawler treads are now considered "mobile equipment".

5. Description of Auto Coverage Symbols is now contained in Section I – Covered Autos, rather than on the policy declarations.

6. Policy Conditions dealing with Cancellation, Inspection, Changes, and Transfer of Your Interests in This Policy have been removed from the new Business Auto Coverage Form. Similar, but modified, Conditions are now found in the Common Policy Conditions (**IL T0 01**) issued with this policy. Review all Common Policy Conditions carefully so you fully understand your rights and responsibilities associated with your insurance policy.

7. The following General Conditions have been added to your new Business Auto Coverage Form: Concealment, Misrepresentation Or Fraud; Liberalization; and Premium Audit. Review these new Conditions carefully.

<u>BROADENED FEATURES OF THE BUSINESS AUTO COVERAGE FORM (**CA 00 01 10 01**)</u>

1. The Covered Auto provisions of your policy have been expanded to include a Temporary Substitute Auto.

2. Under Liability Coverage Extensions, Supplementary Payments, your limit for cost of bail bonds has been increased from $250 to $2000.

3. Under Liability Coverage Extensions, Supplementary Payments, the limit for payments for reasonable expenses incurred by the "insured" at our request has been increased from $50 a day to $250 a day.

4. The Liability Exclusion dealing with contracts or agreements has been revised. The new Contractual exclusion contains exceptions for "insured contracts" and exceptions for liability the "insured" would incur in the in the absence of a contract or agreement.

5. The Liability Exclusion dealing with "property damage" to property in the "insured's" care, custody, or control has been modified by adding an exception for liability assumed under a sidetrack agreement.

6. Under Physical Damage Coverage, Specific Causes of Loss Coverage has been expanded to include the peril of lightening.

7. Under Physical Damage Coverage Extensions, Transportation Expenses, the limits have been increased from $10 per day and a $300 maximum to up to $20 per day and a $600 maximum.

8 Under Physical Damage Coverage Extensions, a new coverage titled Loss Of Use Expenses has been added. This coverage provides up to $20 per day (subject to a maximum of $600) for expenses an "insured" becomes legally responsible to pay for loss of use of a vehicle rented without a driver.

9. Business Auto Conditions, Loss Payment – Physical Damage Coverages has been modified to clearly state that if we pay for a "loss", payment will include the applicable sales tax for the damaged or stolen property.

10. Policy Territory has been expanded to <u>anywhere in the world</u> for a covered "auto" of the private passenger type leased, hired, rented, or borrowed without a driver for a period of 30 days or less, subject to certain requirements regarding about where a "suit" is brought and settlement agreed to.

<u>RESTRICTIVE FEATURES OF THE BUSINESS AUTO COVERAGE FORM (**CA 00 01 10 01**)</u>

1. Under Liability Coverage, A. Coverage, a provision has been added which limits coverage for pollution to that defined by "covered pollution cost or expense". This limited grant of coverage is also subject to other applicable terms and conditions of the policy.

2. Under Liability Coverage, Out-Of-State Coverage Extensions, the increased limits provision does not apply to limits specified by any law governing motor carriers of passengers or property.

3. The following new Liability Exclusions have been added to the policy: Expected Or Intended Injury, Employee Indemnification And Employer's Liability, Operations, Completed Operations, War and Racing.

4. Under Liability Coverage, the Pollution Exclusion has been significantly revised and expanded to exclude the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants". Please read the new provisions carefully.

**PN T4 05 01 04**

5.  The Who Is An Insured provisions under Liability Coverage have been significantly revised by adding exceptions dealing with a partner (if the insured is a partnership) or a member (if the insured is a limited liability company).

6.  Liability, Limit of Insurance provisions have been modified to address "covered pollution cost or expense" and to state that no one is entitled to duplicate payments for the same elements of "loss" under the Business Auto Coverage Form and any Medical Payments Coverage Endorsement, Uninsured or Underinsured Motorists Endorsements attached to your policy.

7.  Under Physical Damage Coverage two new exclusions have been added. One deals with loss to a covered auto while being used in professional or organized racing, demolition or stunting activity. The other new exclusion deals with loss arising out of "diminution in value".

8.  Three Physical Damage Coverage exclusions in the old policy dealing with Nuclear Weapons, Radioactivity, and War have been expanded in their scope and consolidated into two new exclusions: Nuclear Hazard, and War Or Military Action.

9.  The Physical Damage Specified Causes of Loss Deductible applicable to Mischief or Vandalism has been increased from $25 to $250.

10. Under Physical Damage Coverage, Towing and Labor Coverage is no longer an included coverage with a $25 limit. Towing and Labor Coverage has been changed to an optional coverage where the customer can choose a limit. A separate premium charge applies if Towing and Labor coverage is selected.

11. A Physical Damage Exclusion has been added to remove coverage for loss to speed measuring equipment, laser detectors, and any jamming apparatus intended to elude or disrupt speed measurement equipment.

12. The Physical Damage Exclusion dealing with loss to tapes, records, or other sound reproducing devices has been expanded to exclude coverage for loss to discs or other similar audio, visual or data electronic device designed for use with audio, visual or data electronic equipment.

13. The Physical Damage Exclusions dealing with loss to tape decks or other sound reproducing equipment and sound receiving equipment designed for use as citizens' band radio or two-way mobile radio or telephone have been modified to apply to any electronic equipment that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

14. Physical Damage Limit Of Insurance has been modified to address adjustment for depreciation and physical condition and to state our intent not to pay for betterment.

15. The Conditions dealing with Duties In The Event Of Accident, Claim, Suit Or Loss have been expanded to state the Company has no duty to provide coverage unless there has been full compliance with the listed duties. A new duty requires you to keep a record of your expenses for consideration in the settlement of a claim.

## AMENDATORY ENDORSEMENT

BROADENED FEATURES OF AMENDATORY ENDORSEMENT (CA F0 14 01 04)

1.  The Definition of "employee" has been expanded to include a "temporary worker".

## BUSINESS AUTO COVERAGE EXTENSION FORM

BROADENED FEATURES OF BUSINESS AUTO COVERAGE EXTENSION FORM (CA T3 53 01 04)

1.  Under Liability Coverage Extensions, Supplementary Payments, the limit for cost of bail bonds has been increased from $2,000 to $3,000. Also, the limit for all reasonable expenses incurred by the "insured" at the Company request has been increased from $250 per day to $500 per day.

2.  Three new provisions have been added: Employees As Insured, Notice Of And Knowledge Of Occurrence, and Unintentional Errors Or Omissions.

RESTRICTIVE FEATURES OF BUSINESS AUTO COVERAGE EXTENSION FORM **(CA T3 53 01 04)**

1.  The Broadened Named Insured provision has been amended not to apply to persons or organizations for which coverage is excluded by endorsement.

2.  Under Hired Car – Worldwide Coverage, reimbursement for expenses will be part of the Limit of Liability Coverage shown in ITEM TWO of the Business Auto Coverage Part Declarations, and not in addition to such limits.

3.  Under Hired Car – Worldwide Coverage, you must maintain the greater of (a) the compulsory admitted liability insurance limit required by the jurisdiction where an "accident" occurs, (b) liability insurance limits required by law by a governmental entity, or (c) $300,000 Combined Single Limit or $100,000 per person/$300,000 per accident Bodily Injury, $100,000 Property Damage.

PN T4 05 01 04

 **TRAVELERS**

# COMMERCIAL AUTOMOBILE — VIRGINIA

### IMPORTANT NOTICE

IN ADDITION TO THE MINIMUM INSURANCE REQUIRED BY LAW, YOU MAY PURCHASE ADDITIONAL INSURANCE COVERAGE FOR THE NAMED INSURED AND FOR HIS RELATIVES WHO ARE MEMBERS OF HIS HOUSEHOLD WHILE IN OR UPON, ENTERING OR ALIGHTING FROM A MOTOR VEHICLE, OR THROUGH BEING STRUCK BY A MOTOR VEHICLE WHILE NOT OCCUPYING A MOTOR VEHICLE, AND FOR OCCUPANTS OF THE INSURED MOTOR VEHICLE. THE FOLLOWING HEALTH CARE AND DISABILITY BENEFITS ARE AVAILABLE FOR EACH ACCIDENT:

1. PAYMENT OF UP TO $2,000 PER PERSON FOR ALL REASONABLE AND NECESSARY EXPENSES FOR MEDICAL, CHIROPRACTIC, HOSPITAL, DENTAL, SURGICAL, AMBULANCE, PROSTHETIC AND REHABILITATION SERVICES, AND FUNERAL EXPENSES RESULTING FROM THE ACCIDENT AND INCURRED WITHIN THREE YEARS AFTER THE DATE OF THE ACCIDENT. HOWEVER, IF YOU DO NOT PURCHASE THE $2,000 LIMIT OF COVERAGE, YOU AND THE COMPANY MAY AGREE TO ANY OTHER LIMIT; AND

2. AN AMOUNT EQUAL TO THE LOSS OF INCOME UP TO $100 PER WEEK IF THE INJURED PERSON IS ENGAGED IN AN OCCUPATION FOR WHICH HE RECEIVES COMPENSATION, FROM THE FIRST WORK DAY LOST AS A RESULT OF THE ACCIDENT UP TO THE DATE THE PERSON IS ABLE TO RETURN TO HIS USUAL OCCUPATION. SUCH PAYMENTS ARE LIMITED TO A PERIOD EXTENDING ONE YEAR FROM THE DATE OF THE ACCIDENT.

   IF YOU DESIRE TO PURCHASE EITHER OR BOTH OF THESE COVERAGES AT AN ADDITIONAL PREMIUM, YOU MAY DO SO BY CONTACTING THE AGENT OR COMPANY THAT ISSUED YOUR POLICY.

### IMPORTANT NOTICE

IN ADDITION TO THE INSURANCE COVERAGE REQUIRED BY LAW TO PROTECT YOU AGAINST A LOSS CAUSED BY AN UNINSURED MOTORIST,

IF YOU HAVE PURCHASED LIABILITY INSURANCE COVERAGE THAT IS HIGHER THAN THAT REQUIRED BY LAW TO PROTECT YOU AGAINST LIABILITY ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF THE MOTOR VEHICLES COVERED BY THIS POLICY, AND YOU HAVE NOT ALREADY PURCHASED UNINSURED MOTORIST INSURANCE COVERAGE EQUAL TO YOUR LIABILITY INSURANCE COVERAGE;

1. YOUR UNINSURED AND UNDERINSURED MOTORIST INSURANCE COVERAGE HAS INCREASED TO THE LIMITS OF YOUR LIABILITY COVERAGE AND THIS INCREASE WILL COST YOU AN EXTRA PREMIUM CHARGE; AND

2. YOUR TOTAL PREMIUM CHARGE FOR YOUR MOTOR VEHICLE INSURANCE COVERAGE WILL INCREASE IF YOU DO NOT NOTIFY YOUR AGENT OR INSURER OF YOUR DESIRE TO REDUCE COVERAGE WITHIN 20 DAYS OF THE MAILING OF THE POLICY OR THE PREMIUM NOTICE, AS THE CASE MAY BE.

3. IF THIS IS A NEW POLICY AND YOU HAVE ALREADY SIGNED A WRITTEN REJECTION OF SUCH HIGHER LIMITS IN CONNECTION WITH IT, PARAGRAPHS 1 AND 2 OF THIS NOTICE DO NOT APPLY.

PN T2 11 03 94

POLICY NUMBER: BA-3318W962-07-SEL

COMMERCIAL AUTO
ISSUE DATE: 11-17-06

# DRIVER RECORD INFORMATION

This list includes those drivers who will be using your automobiles insured through us. Please be sure this listing is complete and includes both full-time and occasional users. If this information needs modification or when drivers are added or deleted, please complete this form and send it to your agent.

| DRIVER'S NAME | | DATE OF | LICENSE | STATE | ADDITION/ |
| LAST | FIRST | BIRTH | NUMBER | LICENSED | DELETE |
|---|---|---|---|---|---|
| GROSSBERG | BRUCE | 042253 | T23899286 | VA | |
| GROSSBERG | TAWNY | 122259 | 243111904 | VA | |
| POSADA DEL RIO | SANTO | 100967 | T64233498 | VA | |
| BUTLER | DEANNE | 060269 | T63679443 | VA | |
| TRUEHEART | MICHAEL | 082960 | T67164032 | VA | |
| BUTLER | KARA | 111361 | T67121825 | VA | |
| WEISS | ANDREA | 091669 | B23837535 | VA | |
| CULLEY | MARY | 040168 | T24696615 | VA | |
| MAXWELL | BOBBY | 101568 | T63666568 | VA | |
| MASON | MARVIN | 061762 | T67126817 | VA | |
| COLUMBINE | GUY | 083070 | T67185060 | VA | |
| MILLER | MARLENE | 011865 | 2C24602254 | VA | |
| YORK | GARY | 091663 | T67145277 | VA | |
| BUTLER | ERIK | 042666 | T63667581 | VA | |

# IMPORTANT INFORMATION REGARDING
# YOUR INSURANCE

In the event you need to contact someone about this insurance for any reason, please contact your agent. If you have additional questions you may contact the Travelers office nearest you at the following address and telephone number:

WASHINGTON, D.C. OFFICE
14048 Parkeast Circle
Chantilly, Virginia 20151
(703) 818-6632

RICHMOND OFFICE
300 Arboretum Place
Richmond, VA 23236
(804) 330-6666

Someone in Commercial Lines will be available at the above locations to assist you.

If you have been unable to contact or obtain satisfaction from Travelers or your agent, you may contact the Virginia State Corporation Commission's Bureau of Insurance at:

Property and Casualty Division
P.O. Box 1157
Richmond, VA 23218

In state, toll free: 1-800-552-7945
Out of state, toll free: 1-877-310-6560

Written correspondence is preferable so that a record of your inquiry is maintained. When contacting your agent, Travelers or the Bureau of Insurance, have your policy number available.

PN T1 01 01 04

**V I R G I N I A:**

**IN THE CIRCUIT COURT OF THE CITY OF RICHMOND**

**JOHN MARSHALL COURTS BUILDING**

CASE NO. _CL07-4998_

TAWNY GROSSBERG                                          PLAINTIFF,

v.

BARBARA LAMM GREGORY
3005 Brook Road
Richmond, VA                                            DEFENDANT.

## COMPLAINT

1.   On or about November 12, 2005, plaintiff was operating a Honda vehicle in an easterly direction on Marshall Street at or near its intersection with Summit Avenue in the City of Richmond, Virginia.

2.   At that time and place, defendant was operating a Toyota vehicle in a southerly direction on Summit Avenue.

3.   At that time and place, the intersection of Summit Avenue and Marshall Street was controlled by a stop sign for vehicles on Summit Avenue.

4.   At that time and place, the defendant failed to stop and to yield the right of way and drove across Marshall Street.

5.   At that time and place, the defendant's vehicle crashed


EXHIBIT
2

into the plaintiff's vehicle.

6.   The above described collision was the direct and proximate result of the careless, reckless and negligent operation of the Toyota vehicle by the defendant.

7.   As a proximate result of the above-described collision, plaintiff was caused to suffer serious and permanent injuries; has suffered and will suffer in the future pain of body and mind; has incurred and will incur in the future medical and related expenses; and has been deprived of earnings and earning capacity.

WHEREFORE, plaintiff demands judgment against the defendant in the sum of ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00), plus pre-judgment and post-judgment interest and costs.

Trial by jury is demanded.

TAWNY GROSSBERG

BY: _____

P. CHRISTOPHER GUEDRI
Allen, Allen, Allen & Allen
1809 Staples Mill Road
P. O. Box 6855
Richmond, VA   23230
(804) 359-9151
(804) 257-7599 (facsimile)

Attorneys for Plaintiff

VIRGINIA:

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND
### John Marshall Courts Building

TAWNY GROSSBERG,

     Plaintiff,

v.

                                        Case No. CL07004998-00 - 8

BARBARA LAMM GREGORY,

     Defendant.

### JUDGMENT ORDER

On June 4, 5, and 8, 2009, came the parties, by counsel, and in person, for trial upon the pleadings heretofore filed.

Whereupon, came a jury of thirteen (13), from which each side struck three (3). By agreement of the parties, a seventh juror was released and the remaining six (6) were sworn to well and truly try the issues joined and a true verdict render according to the evidence and the law.

Thereafter, the evidence of the plaintiff was presented, and after the plaintiff had rested, the evidence of the defendant was then presented.

And the jury having heard all of the evidence, received instructions from the Court, heard arguments of counsel, retired to their room to consult of their verdict and, after some time, returned into the court and rendered the following verdict:

> We, the jury, on the issues joined, find in favor of the plaintiff, Tawny Grossberg, and against Barbara Gregory, and award damages in the amount of $615,000.00. We award the plaintiff interest on the amount of $123,000.00 from November, 2005.

                                      Patricia Selinger, Foreperson

1



It is therefore ADJUDGED and ORDERED that the plaintiff recover and have judgment against the defendant, Barbara Lamm Gregory, in the amount of SIX HUNDRED FIFTEEN THOUSAND DOLLARS AND 00/100 ($615,000.00) with interest on ONE HUNDRED TWENTY THREE THOUSAND AND 00/100 ($123,000.00) from November 2005 until paid and post-judgment interest from June 8, 2009 until paid.

And nothing further remaining to be done, it is ORDERED that this cause be stricken from the docket and the papers placed among the ended causes.

ENTERED this _____1 st_____ day of _____October_____, 2009.

_____
Clarence N. Jenkins, Jr., Judge

I ask for this:

_____
P. Christopher Guedri, Esquire
Allen, Allen, Allen & Allen
P. O. Box 6855
1809 Staples Mill Road
Richmond, VA 23230
Counsel for Plaintiff Tawny Grossberg

_____
David L. Hauck, Esquire
Duane, Hauck & Gnapp, PC
10 East Franklin Street
Richmond, VA 23219-2106
Counsel for Defendant Barbara Lamm Gregory

_____
Lisa Kent Duley, Esquire
Law Offices of Mark J. Beachy
300 Arboretum Place, Suite 250
Richmond, VA 23236
Counsel for Travelers Indemnity Company of America

2